## Case No. 10,092.

### NEILSON et al. v. The LAURA.

[2 Sawy. 242.][1]

District Court, D. California. Sept. 12, 1872.

SICK SEAMAN ENTITLED TO WHOLE WAGES WHEN NO FRAUD—MASTER'S AUTHORITY TO INCREASE WAGES.

1. When a seaman was unable to perform duty during a part of the voyage, by reason of sickness, held, that he was entitled to his whole wages, notwithstanding that the sickness may have begun before he signed the articles, but after he had entered on the service.

[Cited in Longstreet v. The R. R. Springer, 4 Fed. 672; The W. L. White, 25 Fed. 504.]

2. It is no objection to his claim that the sickness may have had its origin in some previous injury or infection, not occasioned by his own fault, provided he has acted in good faith, and without fraudulent misrepresentation or concealment.

3. Although the master's authority in general extends to all matters connected with the hiring of the crew, he cannot, after the contract is made, at his mere will, bind the owners to the payment of increased wages, unless some consideration be given for the advance, or in the exercise of a reasonable discretion, he had the right to suppose he would thereby promote the interests of the adventure; and especially is this the case where the master has not been selected by the owners, but appointed by a consul at a foreign port.

[In admiralty. This was a libel by Jens Neilson and Buckhardt for wages.]

T. B. Mildram, for libellants.

H. C. & C. R. Greathouse, for claimants.

HOFFMAN, District Judge. The libellant [Jens] Neilson sues for wages due him as seaman on a voyage in the above vessel, from this port to the Cocos Islands, Punta Arenas, and other Central American ports, and back to San Francisco. His claim is contested on the ground that, owing to physical disability, he failed to render the service contracted for; and that his wages should be reduced to a compensation for the service actually rendered:

The facts appear to be as follows:

On the 18th January, 1872, Neilson, with some others of the crew, went on board the Laura to serve as seamen on the contemplated voyage of the brig to the Cocos Islands, in search of the hidden treasure. The departure of the vessel having been delayed by causes not specially detailed, the men were informed by the master that they would be allowed, during the detention of the vessel, wages at the rate of one dollar per day. The libellant states that he was hired at the rate of thirty dollars per month; but the difference is immaterial, as the men were paid in full up to the time when they signed the articles, and no claim is made for wages earned prior to that date. The articles were signed the nineteenth of February; the vessel sailed on the twenty-sixth of February. Some time after coming on board, Neilson

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

appears to have hurt his leg while in the performance of his duty. This occurred before the signing of the articles, and it was known to the master and the crew. The injury did not prevent Neilson, so far as appears, from doing his duty, and it seems to have been regarded as slight, and unlikely to produce serious results. Neilson states that he showed his leg to the master, and expressed doubts as to the propriety of his going to sea. The master told him that it would soon get well, and that he didn't wish him to leave.

Some eight or ten days after leaving port, Neilson again hurt his leg while doing some duty aloft. The sore on his leg was examined by the doctor on board, and found to be an ulcer of an aggravated kind. It proved, on treatment, to be obstinate and intractable, and Neilson's leg remained in consequence, during the whole voyage, in a condition which prevented the full performance of his duty. The master estimates roughly that he did able seaman's duty about one third of the time. At other times he worked about the deck, or did no duty whatever.

From its persistency and resistance to treatment, as well as from its appearance, the doctor supposed the ulcer to have been venereal. He states, however, that it was not caused by syphilitic disease, and I understand him to mean that an otherwise trivial injury was aggravated and made obstinate by some ancient venereal taint, which he supposed to have existed in the patient's constitution. Some evidence was offered, tending to show that Neilson admitted that he had hurt his leg while "sky-larking on shore." This Neilson denies. I do not consider the inquiry important, for if the leg was hurt prior to his coming on board, the injury must have been very slight, as he performed his duty during the whole time the vessel lay in port, from the eighteenth of January until the twenty-sixth of February, and for ten days or two weeks thereafter after the vessel had put to sea.

The question thus presented is: Did the disability of the seaman occur while in the service of the vessel, and not through his own fault or misconduct?

The general principle that the seaman is not only entitled to his wages during any sickness or disability occurring to him while in the service, without fault or misconduct on his own part, but also to be cured at the ship's expense, is not disputed. But it is contended that in this case the injury was sustained before the commencement of the voyage, and before, by the signing of articles, he entered into the service of the ship.

In Ex parte Giddings [Case No. 5,404], Mr. Justice Story rejected the claim of a mariner to a share of the prizes of a privateer (which he put on the same footing as a claim for wages), where the disability occurred after the signing of articles, but be-

fore the cruise was actually begun. In that case, it appeared that the seaman was discharged at the home port of the vessel with his own consent.

But the same learned judge, in Reed v. Canfield [Case No. 11,641], held that the right to be cured at the ship's expense extends to "all sickness and injuries sustained in the service, and while the party constitutes one of her crew, whether they occur at a home or in a foreign port, at the commencement or at the termination of the voyage. The voyage of the ship must, so far as the seamen are concerned, be deemed to commence when they are to perform service on board, and to terminate when they are discharged from further service."

The fact that the articles have not been signed is immaterial, if the seamen have been engaged for the voyage, and are on board the vessel in the performance of their duty. The articles are required for the protection of the seaman, but his rights are not impaired, or his relations to the vessel affected to his disadvantage by an entire omission to enter into the formal engagement required by law.

If the circumstances of the case required it, I should have little hesitation in deciding that, where a seaman engaged for a voyage sustains an injury while in the service of the ship, but before she sails, and before the articles are signed and without any fraud or concealment on his part he is retained in the service, and performs the voyage, he is entitled to his wages, notwithstanding that he proves unable to discharge his duty, either in whole or in part.

If the injury be such as obviously to disable him for the performance of his duty, he may be discharged, especially with his own consent, as was the case in Ex parte Giddings [supra]. He would then be entitled to compensation for the services already rendered, and probably to be cured at the ship's expense.

But in the case at bar, I think it clear that the disability must be considered to have occurred during the voyage. The original injury, whether Neilson received it after he came on board the vessel or before, must have been slight, for he continued to do duty for some weeks afterwards, and was permitted to ship without objection. He unquestionably sustained a further injury after the voyage commenced, and his subsequent disability was the result of the original hurt, aggravated by the injury received on board, and perhaps by the exposure and other unfavorable conditions incident to his situation. I do not understand the rule to require that the sickness of the seaman should have originated during the voyage; it is only necessary that it occur during the voyage, without fault or misconduct on his part. Were it otherwise, he would be deprived, in great measure, of its benefit.

If, for example, he have a cut on his hand at the time of shipment, and erysipelas supervenes during the voyage, and he is unable to do duty, the sickness that incapacitated him would be deemed to have occurred during the voyage. So, if he have a cold, which is succeeded during the voyage by some pulmonary disease, the disease which disables him would clearly be the pulmonary affection, and not the cold in which it had its origin. So, if after the commencement of the voyage, he fall sick of small-pox or other infectious disorder, his claim to wages, and to be cured at the ship's expense, could hardly be resisted on the ground that the infection was received before he shipped, and that the seeds of the disease were lurking in his system when he entered into the service. The rule should receive a liberal as well as rational construction. It would be infinite to explore the remote causes of disease, or to attempt to assign to each of the various causes which have concurred in producing the result its precise effect. If the seaman, without fraud or concealment, and believing himself able to perform his duty, enters upon the service, his subsequent illness, whether it be due to the development into serious disease of some slight injury, previously received, or ailment previously contracted, whether the unfavorable symptoms be caused by the exposure and hardships of the service, or are to be ascribed to some vice in the patient's constitution, or whether it be the natural and inevitable effect of some previous infection; in none of these cases would the rights of the seaman, under the just, as well as humane rule so universally adopted in all the maritime codes, be impaired.

I think Neilson is entitled to the full amount of his wages, without deduction.

With regard to Buckhardt, there is more room for doubt. His claim is founded on an alleged agreement by the master to pay him $30 in lieu of the nominal sum which by the articles he was to receive.

If it appeared that in consideration of additional services, the master had in the reasonable exercise of his discretion, promoted him, and promised the wages of the station to which he was advanced, there would be no objection to his claim. The master's authority, in general, extends to all matters connected with the employment and hiring of the crew.

But after the contract with the seaman has been made, the master cannot capriciously, and at his mere will, bind the owners to the payment of increased wages, unless it appear that some consideration was rendered for the advance, or that, in the exercise of a fair discretion, he was justified in supposing he would thereby promote the interests of the adventure. In this case, the master, by whom the promise is alleged to have been made, was not the master to whom the owners had entrusted the vessel. He became such by the appointment of the

consul at a foreign port. It would even seem that, at the time he agreed to give the additional wages, he had not been formally appointed. The services rendered by the man were in no respect different from, or more valuable than, those he had previously performed, and for which he shipped. No entry of the agreement was made in the articles; and the claim rests on an alleged oral promise of the master to the man.

The master alleges that he hired the man in place of the steward who had left, and that the cook refused to stay unless a new steward was employed. Of the thirty dollars per month additional wages allowed to Buckhardt, ten dollars were to be given to the cook. It is a little singular, if this were the case, that the cook has made no demand for the ten dollars per month which he was to receive.

So far as I can gather from the testimony, the services of a steward seem to have been unnecessary. Five out of the eight passengers had left the vessel, and the testimony shows that after his employment as steward, Buckhardt performed the same duty as he had previously discharged as waiter.

There are some other circumstances indistinctly disclosed by the testimony, which lead me to doubt whether the master, in promising to Buckhardt the additional compensation, was acting in the exercise of a reasonable discretion, and with exclusive regard to the interest of the service. If not, he exceeded his authority, and went beyond the limits of his agency. He had no right to indulge in favoritism or even generosity at the expense of the owners of the vessel.

On the whole, I am of opinion that Buckhardt's claim should be rejected, except for the amount of wages as stipulated in the articles.